# United States District Court
## Central District of California

UNITED STATES OF AMERICA vs.

**Docket No.** ___CR02-00220(B)-SJO___

**Defendant** __KRYLOV, Petro__

**Social Security No.** 1   6   1   6
(Last 4 digits)

akas: __Petro Lickrylov; Petro Elakrylov__

## JUDGMENT AND PROBATION/COMMITMENT ORDER

| | MONTH | DAY | YEAR |
|---|---|---|---|
| In the presence of the attorney for the government, the defendant appeared in person on this date. | Jan. | 11, | 2008 |

**COUNSEL** | [x] **WITH COUNSEL** _David R. Evans and George W. Buehler, appointed_
(Name of Counsel)

**PLEA** | [ ] **GUILTY,** and the court being satisfied that there is a factual basis for the plea. [ ] **NOLO CONTENDERE** [x] **NOT GUILTY**

**FINDING** | There being a finding/verdict of [x] **GUILTY,** defendant has been convicted as charged of the offense(s) of: 18 USC § 1203 - CONSPIRACY TO TAKE HOSTAGES RESULTING IN DEATH AS CHARGED IN COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT; 18 USC § 1203 - CONSPIRACY TO TAKE HOSTAGES RESULTING IN DEATH AS CHARGED IN COUNTS, TWO, THREE, AND FOUR OF THE SECOND SUPERSEDING INDICTMENT; 18 USC § 1956(h) - CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS AS CHARGED IN COUNT FIVE OF THE SECOND SUPERSEDING INDICTMENT.

**JUDGMENT AND PROB/ COMM ORDER** | The Court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of:

A guilt phase verdict as to defendant Petro Krylov, was unanimously delivered by the jury and published, filed and recorded by the Court on April 26, 2007.

A penalty phase verdict as to defendant Petro Krylov, was unanimously delivered by the jury and published, filed and recorded by the Court on May 22, 2007.

It is ordered that the defendant shall pay to the United States a special assessment of $500, which is due immediately to the Clerk of the Court.

All fines are waived as it is found that the defendant does not have the ability to pay a fine within the fine range.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Petro Krylov, is hereby committed on Second Superseding Indictment to the custody of the Bureau of Prisons to be imprisoned for a term of Life without the possibility of release. This term consists of Life without the possibility of release, on each of Counts 1, 2, 3 and 4, to be served consecutively and a term of 240 months on Count 5, such term to be served concurrently with life sentence previously imposed.

Should the defendant ever be released from imprisonment, the defendant shall be placed on supervised release for a term of five years. This term consists of five years on each of Counts 1, 2, 3 and 4, and three years on Count 5, all such terms to run concurrently and under the following terms and conditions:

USA vs.   **KRYLOV, Petro**                                    Docket No.:   **CR02-00220(B)-SJO**

1. The defendant shall comply with the rules and regulations of the U. S. Probation Office and General Order 318;

2. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight tests per month, as directed by the Probation Officer;

3. During the period of community supervision the defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment;

4. The defendant shall comply with the immigration rules and regulations of the United States, and if deported from this country, either voluntarily or involuntarily, not reenter the United States illegally. The defendant is not required to report to the Probation Office while residing outside of the United States; however, within 72 hours of release from any custody or any reentry to the United States during the period of Court-ordered supervision, the defendant shall report for instructions to the United States Probation Office, located at:

United States Court House
312 North Spring Street, Room 600
Los Angeles, California  90012

5. The defendant shall not obtain or possess any driver's license, Social Security number, birth certificate, passport or any other form of identification in any name, other than the defendant's true legal name, without the prior written approval of the Probation Officer; nor shall the defendant use, for any purpose or in any manner, any name other than his true legal name;

6. The defendant shall cooperate in the collection of a DNA sample from the defendant.

Pursuant to the parties' Stipulation Waiving Jury Determination of Criminal Forfeiture, the Court finds that a total of $1,203,628.00 constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1203 (i.e., Counts One through Four) for which defendant has been convicted. Pursuant to Title 18, United States Code, Section 981 (a) (1) (C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), and Count Seven of the Second Superseding Indictment, defendant shall forfeit to the United States $1,039,716.46 as the sum constituting or deriving from proceeds traceable to the violations of Title 18, United States Code, Section 1203 for which defendant has been convicted (as reduced by the net amount already forfeited in related civil and administrative forfeiture proceedings). A Personal Money Judgment in that amount has been contemporaneously entered against defendant.

The Court advises the defendant of his right to appeal and his right to appeal in forma pauperis.

The Court orders that a copy of the transcript from this proceeding be attached to this judgment and

USA vs.   **KRYLOV, Petro**                                       Docket No.:   **CR02-00220(B)-SJO**

commitment order.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

January 11, 2008                                      /S/  S. James Otero
_____                          _____
Date                                                  U. S. District Judge/Magistrate Judge

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Sherri R. Carter, Clerk

January 11, 2008                          By   /S/  Victor Paul Cruz
_____              _____
Filed Date                                        Deputy Clerk

---

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

### While the defendant is on probation or supervised release pursuant to this judgment:

1. The defendant shall not commit another Federal, state or local crime;
2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5. the defendant shall support his or her dependents and meet other family responsibilities;
6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7. the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, for felony cases only: not possess a firearm, destructive device or any other dangerous weapon.

The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

USA vs.   **KRYLOV, Petro**                                    Docket No.:   __CR02-00220(B)-SJO__

### STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution , however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as requred by 18 U.S.C. §3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

1. Special assessments pursuant to 18 U.S.C. §3013;
2. Restitution, in this sequence:
   Private victims (individual and corporate),
   Providers of compensation to private victims,
   The United States as victim;
3. Fine;
4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
5. Other penalties and costs.

### SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account. All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses. Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

USA vs.   **KRYLOV, Petro**                                     Docket No.:   **CR02-00220(B)-SJO**

## RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____
the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

By _____
Deputy Marshal

_____
Date

## CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____
Deputy Clerk

_____
Filed Date

## FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed) _____              _____
             Defendant                                                        Date

_____              _____
U. S. Probation Officer/Designated Witness                Date

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )    CASE NO:  CR-02-220(B)-SJO
                           )
        Plaintiff,     )       CRIMINAL
                           )
   vs.              )    Los Angeles, California
                           )
PETRO KRYLOV,          )    Friday, January 11, 2008
                           )    (1:30 p.m. to 2:33 p.m.)
       Defendant.     )    (3:27 p.m. to 3:27 p.m.)

SENTENCING;

HEARING ON GOVERNMENT MOTION FOR A MONEY JUDGMENT OF FORFEITURE
ON COUNT SEVEN OF THE INDICTMENT

BEFORE THE HONORABLE S. JAMES OTERO,
UNITED STATES DISTRICT JUDGE

Appearances:       See next page

Deputy Clerk:     Victor P. Cruz

Law Clerks:       Tony Lopez
                       Andrew Gloger

Court Recorder:    Margarita Lopez

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

**<u>APPEARANCES FOR</u>:**

The United States:         DEBRA W. YANG, ESQ
                               United States Attorney
                               JACKIE CHOOLJIAN, ESQ
                               Assistant United States Attorney
                               Chief, Criminal Division
                               SUSAN DeWITT, ESQ
                               KIM MEYER, ESQ
                               ROBERT DUGDALE, ESQ
                               MONICA E. TAIT, ESQ
                               Assistant United States Attorney
                               312 North Spring Street
                               Los Angeles, CA 90012

Petro Krylov:             DAVID R. EVANS, ESQ
                               600 S. Lake Avenue, Suite 506
                               Pasadena, CA 91106

                               GEORGE W. BUEHLER, ESQ
                               Geragos & Geragos
                               350 S. Grand Avenue, 39th Floor
                               Los Angeles, CA 90071

Russian Interpreters:    Alex J. Levoff
                               Varvara Olson

3

1        <u>Los Angeles, CA; Friday, January 11, 2008; 1:30 p.m.</u>

2        (Interpreters utilized for Russian translation)

3        (Call to Order)

4        THE CLERK:  This is item number one, Case Number

5  CR-02-220(B)-SJO; *United States of America versus Petro Krylov.*

6        Counsel, please state your appearances.

7        MR. DUGDALE:  Good afternoon, your Honor; Robert

8  Dugdale on behalf of the United States.  And I'm present at

9  counsel table with Assistant United States Attorney Susan

10  DeWitt, Kim Meyer, as well as Monica Knox from the forfeiture

11  section -- Oh, I'm sorry, Monica Tait.  I'm sorry.  Monica

12  Tait, as well as Special Agent Louis Perez of the FBI.

13        THE COURT:  Good afternoon.  It's Ms. Tait?

14        MR. DUGDALE:  Tait, your Honor.

15        MS. TAIT:  That's correct, your Honor.

16        THE COURT:  T-a-t-e?

17        MS. TAIT:  T-a-i-t, your Honor.

18        THE COURT:  T-a-i-t.

19        MS. TAIT:  Although I do know Ms. Knox, and I'm

20  alright to be compared.

21        THE COURT:  Thank you.

22        MS. TAIT:  Thanks.

23        MR. BUEHLER:  Good afternoon, your Honor; George

24  Buehler and David Evans appearing for Mr. Krylov, who is

25  present.  Also present with us at counsel table is Kinder Eng

4

1    (phonetic), our mitigation specialist.

2             **THE COURT:**  Good afternoon.  Please have a seat.

3             The matter is here today before the Court for

4    purposes of sentencing.  And concurrent with today's sentencing

5    hearing, the Government moves the Court for a money judgment

6    forfeiture pursuant to Federal Rules of Criminal Procedure Rule

7    32.

8             The Court has reviewed the various pleadings.  In

9    reference to the forfeiture proceeding, the Government moves

10   for entry of a money judgment forfeiture against Mr. Krylov in

11   the amount of $1,039,769.46 and entry of an order of forfeiture

12   in that sum.

13            We'll start first with the sentencing proceeding.  In

14   preparation for today's sentencing proceeding and also in

15   preparation for a hearing on the motion for forfeiture, the

16   Court has reviewed various documents and pleadings.  I just

17   want to make sure that I have reviewed all of the pleadings

18   that have been offered and filed.

19            The Court of course reviewed the Presentence

20   Investigation Report.  The report indicates or references a

21   disclosure date of September 24th, 2007.

22            The Court has read and considered the confidential

23   letter recommendation to this Court from the Probation Officer.

24   The report consists of four pages, and it was authored by the

25   Probation Officer Jill Hadfield-McCracken.

5

1    The Court has reviewed the Government's sentencing

2    position pleading, and that pleading was dated October 5th,

3    2007.

4    The Court has reviewed the sentencing memorandum of

5    defendant Petro Krylov, objections to the report and request

6    for evidentiary hearing, and that was filed or dated 11/19/07.

7    The Government has filed a response to the sentencing

8    position paper filed on behalf of the defendant, and the Court

9    has read and considered that pleading, and that was filed on or

10   about December 28th, 2007.

11   In reference to the motion, the Government has filed

12   a notice of motion and motion for money judgment forfeiture as

13   to Count 7, memorandum of points and authorities.  The Court

14   has considered that motion.

15   Attached to the motion are various Exhibits, A

16   through D, which the Court has reviewed, read, and considered.

17   The defendant filed an opposition to the motion,

18   which the Court has considered.

19   And the Government then filed a reply to the

20   opposition, which the Court has read and considered.

21   Are there any documents or pleadings filed on behalf

22   of the Government that the Court did not reference?

23   **MR. DUGDALE:**  There are not, your Honor; thank you.

24   **THE COURT:**  Any documents or pleadings filed on

25   behalf of Mr. Krylov that the Court did not reference?

1      **MR. BUEHLER:**  No, your Honor.

2      **THE COURT:**  In order to accommodate the defendant and

3  also to make sure that we maintain security in the courtroom,

4  the Court is going to conduct the sentencing proceeding with

5  the defendant seated at counsel table.

6      And counsel, when you address the Court, please do

7  that at the podium.

8      The Government has, I think succinctly and clearly,

9  stated its sentencing position in its pleading.  The

10  Government, in its pleading, references that it concurs with

11  each of the findings and conclusions arrived at by the

12  Probation Officer in the Presentence Report.

13      In the Presentence Investigation Report, the

14  Probation Officer determined that the appropriate offense level

15  is 50.

16      The Probation Officer, Hadfield-McCracken, utilized

17  the Guideline manual in effect on 11/01/06 in calculating the

18  offense level and criminal history category, and the Court

19  believes that's the appropriate Guideline manual to have been

20  used.

21      The Government, in its brief, correctly notes that

22  the offense level of 50 is seven levels higher than the offense

23  level that yields a Sentencing Guideline range of life without

24  the possibility of parole for a defendant with no criminal

25  history.

1    The Presentence Investigation Report, which the

2 Government has adopted as being correctly calculated, further

3 notes that the Sentencing Guideline range associated with Count

4 5, which was conspiracy to launder monetary instruments, is

5 higher than the maximum penalty of 20 years which is provided

6 for by the statute.

7    And accordingly, the Probation Officer has calculated

8 that the Sentencing Guideline range for the defendant as to

9 Counts 1, 2, 3, and 4, is life without the possibility of

10 release, and also 240 months on Count 5, or 20 years.

11    In the Presentence Investigation Report, the

12 Probation Officer has acknowledged that in a case such as this,

13 the reference being that this case involved premeditated

14 killing, life imprisonment without the possibility of release

15 is appropriate, and there are no downward departures that are

16 appropriate.

17    The Government summarizes its position pleading in

18 its conclusion.  I believe the Government's position pleading

19 can be summarized as follows:

20    The Government believes that as a matter of law,

21 pursuant to statute, that the Court has little or no discretion

22 and must impose a sentence of life imprisonment without the

23 possibility of release as to Counts 1, 2, 3, and 4, pursuant to

24 the statute, Title 18, U.S. Code, Section 1203.

25    The Government offers also that assuming that the

1   Court would engage in a Guideline analysis, as the Probation

2   Officer did in the Presentence Report, that a sentence of life

3   imprisonment without the possibility of release is the

4   appropriate sentence under the Guideline analysis.

5          And the Government also offers that if the Court were

6   to perform an analysis exercising any discretion under Title

7   18, 3553, that that nevertheless should result in life

8   imprisonment without the possibility of release.

9          The Government believes that the defendant should be

10  sentenced to life imprisonment without the possibility of

11  release and believes that the Court should impose four

12  consecutive sentences of life imprisonment without the

13  possibility of release in Counts 1 through 4.

14         And the Government believes that a sentence of 20

15  years as to Count 5 is the appropriate sentence.

16         I believe I have summarized as quickly as I could the

17  position of the Government.  Are there any statements that you

18  would like to make that are not articulated in the pleadings

19  offered to the Court?

20         MR. DUGDALE:  Just very, very briefly, your Honor.

21         I think the one issue that was not touched upon is

22  the issue of restitution, which in this case is mandatory.  The

23  Presentence Report does mention this.  It is mandatory under

24  Title 18, United States Code, Section 3663(a), that restitution

25  is mandatory.

1    With that exception, I believe the Court accurately

2 summarized the Government's position in its pleading.   Thank

3 you.

4    **THE COURT:**   In reference to the defendant's position

5 pleading, and I certainly am going to give an opportunity for

6 counsel to make oral argument or oral presentation, and also an

7 opportunity for the defendant to make a statement if he chooses

8 to make a statement.

9    The record should reflect that the Jury found the

10 defendant, Mr. Krylov, guilty of Counts 1, 2, 3, 4, and 5 of a

11 seven-count superseding indictment after a 31-day trial.

12    The Court presided over those proceedings and is very

13 familiar with all of the evidence that was offered by the

14 Government and by the defense in the course of the trial.

15    Count 1, of which the defendant was found guilty,

16 charged a violation of Title 18, U.S. Code 1203, conspiracy to

17 take hostages resulting in death, stemming from Mr. Krylov's

18 involvement in the abduction of Mr. Alexander Umansky, Mr. Nick

19 Kharabadze, and Mr. George Safiev.

20    The Court notes, as pointed out by the defendant in

21 his position pleading, that Mr. Krylov -- that the Jury

22 determined that Mr. Krylov was not involved in the abduction

23 and murder of Ms. Rita Pekler.

24    The Jury also returned a verdict of guilty as to

25 Counts 2, 3, and 4, which charge a violation of Title 18, U.S.

1  Code, Section 1203, hostage-taking resulting in death, again

2  stemming from Mr. Krylov's involvement in the abduction and

3  murder of Mr. Umansky, Mr. Kharabadze, and Mr. Safiev.

4       The Jury also returned a verdict of guilty as to

5  Count 5, which charged a violation of Title 18, U.S. Code

6  1956(h), conspiracy to launder monetary instruments, again

7  stemming from Mr. Krylov's involvement in the laundering of

8  ransom money paid on behalf of the families and the victims of

9  the families.

10      The defendant, in its position pleading, correctly

11  points out that the Jury did not find Mr. Krylov guilty of

12  Count 6, conspiracy to escape from custody.

13      In the defendant's position pleading offered to the

14  Court, the defendant has objected to various portions of the

15  Presentence Investigation Report.  The defendant has objected

16  to paragraphs 10 through 17 of the Presentence Report;

17  paragraphs 20 through 26 of the Presentence Report; paragraphs

18  29 through 32 of the Presentence Investigation Report; and then

19  paragraph 45.

20      To try to encapsulate the objections made by the

21  defendant regarding those paragraphs, the defendant takes the

22  position that the paragraphs do not contain accurate

23  information and contain inaccuracies not supported by the

24  record developed during the course of the trial.

25      The defendant, in its pleading, also takes the

1   position that the Probation Officer failed to take into

2   consideration or into account the evidence that the defendant

3   offered at trial: That Mr. Krylov acted under duress.

4        In reference to paragraphs 58, 64, and 70 of the

5   Presentence Report wherein the Probation Officer has

6   recommended a two-level upward adjustment for obstruction of

7   justice, the defendant has objected to that calculation.

8        The two-level adjustment for obstruction of justice

9   was based on, as best I can discern from the Presentence

10  Report, was based on the attempted escape, and the Jury found

11  the defendant not guilty of Count 6.  Therefore, the defendant

12  has taken the position that it's inappropriate for that two-

13  level adjustment to have been made.

14       In the defendant's sentencing pleading, the defendant

15  has claimed that he's entitled to a two-level downward

16  adjustment for his role in the offense.  He believes his role

17  in the offense was less than that of Mr. Mikhel and Mr.

18  Kadamovas, and he also advances that he acted out of duress; so

19  therefore, the Court should provide the defendant with a two-

20  level downward adjustment for his role in the offense.

21       The defendant, in his position pleading, takes the

22  position that the Guideline calculation by the Probation

23  Officer was incorrectly done because the calculation does not

24  take into account, again, the claim that Mr. Krylov acted under

25  duress.

1       The defendant believes that the statutory mandatory

2  minimum which is required by statute, life imprisonment without

3  the possibility of release, violates his rights under the Fifth

4  and Eighth Amendments to the U.S. Constitution.

5       And the defendant also objects to certain information

6  provided to the Court in the Government's sentencing pleading

7  where the Government has provided information accusing Mr.

8  Krylov of engaging in serious conduct while being held in

9  custody since his arrest, both prior to the trial proceedings

10 and also after the Jury verdict.

11      I should offer, before I conduct the inquiry of the

12 defendant and counsel concerning the Presentence Report, I

13 should offer that after the Jury verdict of guilty, the Court

14 conducted a sentencing proceeding with the same Jury, and the

15 Court returned a verdict as to Counts 1 through 4 of life

16 imprisonment without the possibility of release.

17      I think that summarizes the defendant's position

18 pleading.

19      Does the defendant wish to supplement or make any

20 additional statements to the Court regarding his position on

21 sentencing?

22      MR. BUEHLER:  Does the Court have in mind argument at

23 this point?

24      THE COURT:  No, not at this point.  If you just want

25 to supplement or point out any matter that I failed to consider

1   in the position pleading that has been filed.

2        MR. BUEHLER:  No, the Court has accurately summarized

3   our position, your Honor.

4        THE COURT:  Okay.

5        Shall we start with -- And the Government, as

6   mentioned, has filed a response to that position pleading.  We

7   start with the Presentence Investigation Report.

8        MR. DUGDALE:  Your Honor, I'm sorry to interrupt, but

9   with regard to the response, there is one matter concerning the

10  last issue, and that is this misconduct at the Metropolitan

11  Detention Center.  And I have had some discussions with counsel

12  about this.  Obviously Mr. Krylov takes issue with what has

13  happened there.

14        I believe, especially under the recent Ninth Circuit

15  case that came down in October, *United States versus Saetreun*,

16  I believe, S-a-e-t-r-e-u-n, that the Court's consideration of

17  this is not going to have any effect.  It can't really possibly

18  have any effect on the defendant's sentence ultimately, and in

19  light of that fact, the Government believes probably the most

20  prudent approach, rather than get into a 'he said, she said' on

21  this particular issue, would be for -- The Government will

22  withdraw that particular portion of its sentencing position

23  paper and ask the Court not to consider that conduct.  It's not

24  particularly relevant.  Well, it's not relevant in any way to

25  the sentence that's going to be imposed, just to save the Court

1  time on that.

2          THE COURT:  Okay.

3          MR. DUGDALE:  Thank you.

4          THE COURT:  I appreciate that.

5          Any comments?

6          MR. BUEHLER:  Yes.  I just want to make sure --

7          THE COURT:  Mr. Buehler?

8          MR. BUEHLER:  -- the Court understands what Mr.

9  Dugdale is referring to, and this appears at pages four and

10 five, I believe, of the Government's initial sentencing

11 position paper.  And in that portion of their paper, they set

12 forth various allegations of misconduct by Mr. Krylov while

13 incarcerated at MDC and use some rather harsh terms, along the

14 lines that his conduct at MDC shows that he is capable of

15 engaging in serious criminal conduct without the leadership or

16 pressure from Mr. Mikhel or Mr. Kadamovas, and that this

17 indicates he has shown no true remorse and so forth.

18         We do take very strong issue with the suggestion that

19 Mr. Krylov has engaged in misconduct, and that was the reason

20 why, in our sentencing response papers, we asked for an

21 evidentiary hearing prior to being here today.  We sent a

22 letter to the Government asking them to have present as

23 witnesses certain MDC personnel who could address these issues.

24 And then Mr. Dugdale and I spoke, and he suggested that rather

25 than get into that, rather than use the Court's time for

1   something that in all reality probably wouldn't affect the

2   Court's ultimate decision, that the Government would withdraw

3   the comments it had made in its papers.

4        So, as long as we understand that the Court will

5   disregard those, then we're happy to proceed without an

6   evidentiary hearing; without any testimony regarding those

7   allegations.

8        THE COURT:  Thank you.

9        And at the conclusion, I'll certainly try to clarify,

10  for purposes of the record, and rule or address the objections

11  and other issues raised by the defendant in your position

12  pleading so that the appellate court will understand precisely

13  what the Court has considered and relied on in sentencing the

14  defendant today.

15        We start, again, with the Presentence Investigation

16  Report.  It reflects a disclosure date of September 24th, 2007.

17        Mr. Krylov, did you have an opportunity to review

18  that report?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And Mr. Krylov, it would help if you

21  would respond in Russian and then it will be translated, since

22  we're using an interpreter.

23        Let me inquire: How does counsel want to proceed

24  here?  At the trial, Mr. Krylov did not utilize an interpreter.

25  He is not utilizing an interpreter today, is that correct?

1           MR. BUEHLER:  Yes, your Honor, he's not.

2           THE COURT:  Okay.  And Mr. Krylov, you're entitled to

3   an interpreter.  Do you wish to proceed today without the

4   assistance of an interpreter?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Okay.

7           Okay, Mr. Krylov, you received the Presentence

8   Investigation Report.  Did you review it on or about September

9   24th, 2007, sir?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And did you read each and every page of

12  the report?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And did you understand what you read,

15  sir?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And did you have full opportunity to

18  discuss the contents of the report with your attorneys?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And did you understand the discussions

21  you had with your counsel regarding the contents of the report?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And then my question -- And Mr. Krylov,

24  you felt that you had enough time to consider the contents of

25  the report?

1        THE DEFENDANT:  Yes.

2        THE COURT:  And then my question to counsel, we'll

3  start with Mr. Buehler and then proceed with Mr. Evans.

4        Mr. Buehler, did you receive the report?

5        MR. BUEHLER:  Yes, your Honor.

6        THE COURT:  And did you have full opportunity to

7  consider it?

8        MR. BUEHLER:  Yes, your Honor.

9        THE COURT:  And full opportunity to discuss it with

10  your client?

11        MR. BUEHLER:  Yes, your Honor.

12        THE COURT:  And do you believe you need any

13  additional time to discuss it with your client?

14        MR. BUEHLER:  No, your Honor.

15        THE COURT:  Mr. Evans, same questions.  Did you

16  receive it?

17        MR. EVANS:  I did, your Honor.  I reviewed it with

18  the defendant, and I do not believe he needs additional time to

19  further discuss it.

20        (Pause)

21        THE COURT:  The record should reflect that the Court

22  has carefully read and considered the report and also

23  considered the Probation Officer's Guideline analysis.

24        The Probation Officer has determined that the total

25  offense level is 50.

1    The Probation Officer has determined that the

2  defendant has no prior criminal history and therefore is

3  properly placed into criminal history category one.

4    (Pause)

5    THE COURT:  The Court has considered the analysis.

6  The Court has considered the personal and family data also

7  contained in the report.

8    Of importance for purposes of certain conditions that

9  will be imposed regarding supervised release, the defendant was

10  residing illegally in the United States when he was arrested,

11  and has been so residing since he first entered the United

12  States, and that's reflected in paragraph 87.

13    The report also references that the defendant was not

14  interviewed at the direction of both counsel.

15    As I read Rules of Criminal Procedure Rule 32, it

16  would appear or it implies that the defendant has a right to be

17  interviewed.  I just want to make sure that the defendant is

18  not requesting any right to be interviewed by the Probation

19  Officer prior to sentencing.

20    Is there any request being made by counsel?

21    (No audible response)

22    THE COURT:  You've instructed him not to be

23  interviewed by the Probation Officer.  I assume that Mr. Krylov

24  agrees and there is no request for him to be interviewed by the

25  Probation Officer?

19

1          MR. BUEHLER:  May I speak to Mr. Krylov for just a

2    moment, your Honor?

3          THE COURT:  Yes, please.

4      (Pause - Mr. Buehler confers with Mr. Krylov)

5          MR. BUEHLER:  Your Honor, Mr. Krylov does not wish to

6    be interviewed by the Probation Officer.

7          THE COURT:  Thank you.  I just wanted clarification

8    of that.

9          In reference to any order of restitution, paragraph

10   45, which references the victim impact, references that Mr.

11   Krylov was found, following a Jury trial, to be responsible for

12   the deaths of Mr. Umansky, Mr. Kharabadze, and Mr. Safiev, and

13   also that the co-conspirators received $234,628 in ransom money

14   on behalf of Mr. Umansky, and $960,000 in ransom money on

15   behalf of Mr. Kharabadze and Mr. Safiev, and that certainly was

16   established by the record at trial.

17         The Court will hear further from the Government if

18   the Government has anything additional to offer in reference to

19   sentencing.

20         Anything further?

21         MR. DUGDALE:  No, your Honor.  I would reserve the

22   right to respond to defense position, but I have nothing

23   further to add to our papers at this moment.

24         THE COURT:  Okay.  And then the Court will now hear

25   from counsel if there is any additional argument you would like

1  to make regarding the sentence that the Court should impose.

2       **MR. BUEHLER:**  Your Honor, we obviously don't dispute

3  that the statute requires a mandatory minimum sentence of life

4  in prison.  We have submitted to your Honor our belief that

5  there are Constitutional reasons why it's inappropriate that

6  the Court could not take into account the particular

7  circumstances of this defendant and his involvement, and we'll

8  submit that.

9       And I do agree with Government counsel that, if the

10  Court is going to impose the statutory mandatory minimum, that

11  is the end of the matter as far as the sentence in terms of the

12  amount of time to be served by Mr. Krylov.

13       And on that basis, we'll submit it, your Honor.

14       **THE COURT:**  Thank you.

15       And Mr. Krylov, you're entitled to make a statement

16  if you so choose.  You're not required to but you can make a

17  statement.

18       Do you wish to make a statement to the Court?

19       **THE DEFENDANT:**  No, thank you.

20       **THE COURT:**  And then finally, the rules also allow

21  the families or certain members of the families of victims to

22  address the Court or to make a statement.

23       Is there anyone who wishes to make a statement on

24  behalf of any of the victims who is present here today?

25       Okay, there's one person with his hand raised.  Is

1    that -- Mr. Umansky, did you raise your hand?

2          MR. UMANSKY:  Yes, sir.

3          THE COURT:  Okay.  Do you wish to make a statement,

4    sir?

5          MR. UMANSKY:  Yes.

6          THE COURT:  Okay.

7          Let me have you first consult with the Government so

8    that you understand the parameters of the statement.

9          (Pause - Mr. Umansky confers with Mr. Dugdale)

10         MR. DUGDALE:  Thank you, your Honor.

11         THE COURT:  Mr. Umansky, would you first start by

12   providing your full name.

13         MR. UMANSKY:  Yes.

14         THE COURT:  And then spelling for the record, because

15   everything is being recorded, sir.

16         MR. UMANSKY:  Yeah.  My name is Ruven Umansky,

17   R-u-v-e-n U-m-a-n-s-k-y.  And I want to speak, myself, my

18   family and maybe the other families who grieve with me.  I

19   cannot say for them, but I want to speak.

20         THE COURT:  Okay.  May I have you speak or bring the

21   microphone closer, please, and if you could just speak loudly

22   into the microphone.

23         MR. UMANSKY:  How about now?

24         THE COURT:  Thank you.

25         MR. UMANSKY:  Better?

22

1          THE COURT:  That's better.

2          MR. UMANSKY:  I came to this country to raise my

3     children, and I think I raised them well.  Also to this country

4     came a lot of criminals.  And my son got killed.  It's the

5     worst thing, the worst thing, when parents have to bury their

6     children.  It should be opposite.  And only because somebody

7     wants to make a easy living, somebody wants to make money

8     without working, just by killing people.  They even didn't try

9     to get the -- they just offered to pay the ransom and killed

10    them anyway.  That's animals.

11             And it's not only the main guy, one, two, Kadamovas

12    and Mikhel in this case; but anybody who held them is actually

13    the same thing because they knew about everything and didn't

14    make even a chance to help.  At the trial of the case he was

15    interviewed (phonetic) the seventeenth and he could come and

16    tell the FBI or he could save himself and save my son and the

17    rest of them.  He didn't do that.  Because he was involved in

18    that; he wants to make money, too.

19             Even after the death of my son he owes me some money,

20    so I called him.  He came to the shop and not looking in my

21    eyes, but he came because I told him:  If you not come, I will

22    come to you.  He didn't want me to come to his office; he came

23    to the shop and pay me back those monies.  He owed them to my

24    son.  And he knew even at that time how I just know how can

25    people do like that and then say I was under duress?  What kind

23

1    of duress is?  It's not duress.  It's calculated killing.

2            Thank you.

3            **THE COURT:**  Thank you, Mr. Umansky.

4            Are there any further matters to handle before the

5    Court pronounces sentence?  On behalf of the Government?

6            **MR. DUGDALE:**  Your Honor, the forfeiture matter has

7    to be resolved before sentence is formally imposed.

8            **THE COURT:**  Mr. Buehler?

9            **MR. BUEHLER:**  Again, your Honor, we've set forth our

10   position on the forfeiture statutes.  I can't really take issue

11   with the fact that there are cases that the Government has

12   cited that take a more liberal view of the forfeiture statutes

13   than our analysis.  I think just a plain reading of the terms

14   of the statutes, the very convoluted terms of these statutes,

15   indicates that they aren't just designed to authorize the entry

16   of money judgments, which is what the Government seeks here.

17   And there would have been no need for this very complex set of

18   statutes that have been amended over and over, providing

19   different provisions for different situations if the general

20   policy was simply to allow money judgments against criminal

21   defendants.

22           So I don't think -- it might be a good policy, one

23   can make arguments that it would be good policy for a money

24   judgment to be entered in this type of case.  But the statutes,

25   Congress hasn't written a statute that authorizes the entry of

24

1  a money judgment.  So that is our position.  We'll submit it on

2  that, your Honor.

3        I would like to point out that as far as an order of

4  restitution is concerned, the Presentence Report indicated

5  that -- I forget the exact language -- but that restitution was

6  not appropriate here.  If the Court's going to consider now at

7  the Government's request, very last minute request, the entry

8  of a restitution order, then I think we would want a chance to

9  take a look at the law on that subject and be able to be heard

10 on that subject, your Honor.

11       **THE COURT:**  Well, I would -- before we cover

12 forfeiture, I just would -- there's a technical issue here that

13 the Court needs to address.

14       In the recommendation to the Court from the probation

15 officer, the probation officer did not recommend restitution,

16 for whatever reason.  It would appear that the Government would

17 be correct that the restitution may be required as a matter of

18 law.  That being said, since it was not addressed, not

19 appropriately addressed in the Presentence Investigation

20 Report, the Defendant may be entitled to -- at least for a

21 brief opportunity to address that issue.

22       You think about how we proceed on that and we'll come

23 back to that.  Let's move forward with the forfeiture.

24       The Government has mentioned, the Government moves

25 for entry of a money judgment of forfeiture against Mr. Krylov

1   in the amount of $1,039,769.46 and entry of an order of

2   forfeiture in that sum.

3           The first requirement for entry of a money judgment

4   order has been met.  The first requirement of Rule 32 is that

5   notice, formal notice to the Defendant by a formal pleading in

6   the Indictment, be provided.  Count Number 7 of the Indictment

7   seeks forfeiture of any and all property, which constitutes or

8   is derived from proceeds traceable to a violation of Title 18,

9   U.S. Code 1203.

10          And then Count 7 also specifically seeks entry of a

11  money judgment equal to the amount of such proceeds.  So the

12  Court would conclude that the notice requirement has been

13  complied with.

14          Rule 32 also requires that the jury, unless there's a

15  jury waiver, determine whether the Government has established a

16  requisite nexus between the offense and the proposed money

17  judgment in the matter before the Court.  The Government has

18  offered Exhibit A to the motion.  Exhibit A is a Stipulation

19  waiving jury determination of forfeiture.  The Court will

20  receive that Stipulation as in evidence for purposes of the

21  forfeiture proceeding only.

22      **(Government's Exhibit A was received in evidence)**

23          I would point out that in the jury waiver and the

24  agreement between counsel that was executed on May 22nd, so

25  that the jury would be absolved of the responsibility of making

1   the determination, each side left open the possibility of

2   presenting additional evidence to the Court on the money

3   judgment issue.

4           So I would first inquire of the Government as to

5   whether there's any additional evidence you would want to

6   offer.  The same inquiry would be made of the Defendant.

7           **MS. TAIT:**  Your Honor, there is no additional

8   evidence other than was offered at the trial

9           **THE COURT:**  Okay.  Mr. Buehler, anything --

10          **MR. BUEHLER:**  Yes.  We have no additional evidence,

11  your Honor.

12          **THE COURT:**  The Defendant has waived the jury

13  determinations, so the Court is required to make the

14  determination.

15          The Court has reviewed the position pleadings offered

16  by the Defendant regarding the forfeiture.  The Defendant has

17  made a number of objections to the Government's Motion for

18  Forfeiture.  The Court believes that the Government has

19  correctly cited the law regarding forfeiture in its motion and

20  in its response.

21          The Court believes that *U.S. versus Casey*, 444 F.3d

22  1071, is the case that is most closely situated with the facts

23  here and that *Casey* controls.  *Casey* stands for the

24  proposition, as referenced by the Government, that the District

25  Court must construe the provisions of the forfeiture statute

1  liberally to further achieve the purposes.  And the Court, I

2  believe, that the Government should prevail in its motion.

3       The Court notes that the Government has attached to

4  Exhibits C and D, which are personal money judgment forfeitures

5  against Mr. Mikhel and Mr. Kadamovas, it appears that the

6  proposed Order offered by the Government closely matches, is

7  almost identical to the forfeiture and money judgment Order

8  signed and executed by Judge Tevrizian in that proceeding.

9       The rules require that the Court pronounce the

10  forfeiture conditions orally as part of the sentence imposed on

11  the Defendant and also that the Court must include the

12  forfeiture in the Judgment and Order.

13       The Government has offered proposed language for the

14  Court to read here in open court, and the Court will do that

15  unless there is any objection to that.

16       (No response)

17       No objection being noted, the United States has

18  requested the Court orally pronounce sentencing and enter in

19  the forfeiture section of the Judgment Order imposing a

20  sentence upon Mr. Krylov the following:

21       Pursuant to the parties' stipulation waiving jury

22  determination of criminal forfeiture, the Court finds that the

23  total of $1,203,628 constitutes or is derived from proceeds

24  traceable to the violations of Title 18, U.S. Code,

25  Section 1203, which are Counts One through Four, for which the

1   Defendant was convicted.

2            Pursuant to Title 18, U.S. Code, Section

3   981(a)(1)(C); Title 21, United States Code, Section 853; and

4   Title 28, U.S. Code, Section 2461(c); in Count 7 of the Second

5   Superseding Indictment the Defendant shall forfeit to the

6   United States $1,039,716.46 as the sum constituting or deriving

7   from proceeds traceable to the violations of Title 18, U.S.

8   Code, Section 1203, for which the Defendant has been convicted.

9            As pointed out by the Government, the sum has been

10  reduced by the net amount already forfeited in related civil

11  and administrative forfeiture proceedings.  And the Government

12  has pointed out that in related forfeiture proceedings the

13  Government has liquidated a 2002 Mercedes Benz out of the civil

14  court proceeding in Case Number CV-02-5773.  The sale of that

15  automobile resulted in sale of -- monies received of

16  $42,419.58.  There was administrative forfeiture of $110,100 in

17  cash seized and then administrative forfeiture of $11,391.96 of

18  bank account funds seized.  But it appears that the

19  calculations have been made correctly.

20           A personal money judgment in the sum requested would

21  be made today, along with the sentencing of the Defendant.

22  Before the Court pronounces sentence of the Defendant, let me

23  just address certain objections or issues raised by the

24  Defendant in its pleading so that there's clarity in the

25  record.

1      The Court would decline to address the objections to

2  Paragraphs 9 through 45 of the PSR.  Pursuant to Rule 32 a

3  ruling is unnecessary because they do not affect the sentencing

4  imposed by the Court.

5      In reference to the objections to Paragraphs 58, 64

6  and 70 where the probation officer has recommended a two level

7  adjustment for role in the offense, the Court will not apply

8  the two level adjustment for obstruction of justice.  Because

9  whether or not the Government has proved by clear and

10  convincing evidence that the Defendant attempted to escape, it

11  would not affect the sentence imposed by the Court.  Whether

12  it's an offense level of 50 or 48 is immaterial to the sentence

13  to be imposed by the Court.

14      In reference to the Defendant's other claims that the

15  Defendant acted under duress, there was no evidence offered at

16  trial that convinces this Court that the Defendant so acted.

17      The Court would also conclude that the statutory

18  minimum required does not violate his Fifth or Eighth Amendment

19  rights.  And I would just underscore, even though there's a

20  stipulation, that the Court did not consider the Defendant's

21  custody conduct in reviewing any of the sentencing pleadings;

22  and, therefore, the evidentiary hearing that was initially

23  requested would not have been necessary, in any event.

24      Is there any legal reason why a sentence should not

25  now be pronounced?

1          MR. DUGDALE:  No, your Honor.

2          MR. BUEHLER:  There is one other matter that I would

3    like to bring to the Court's attention for the record, and that

4    is, the Government also attached to its last pleading an FBI

5    interview memorandum of a man named Armen Gyurdzhiyants.  And

6    we object to that being considered.  It's hearsay.

7          THE COURT:  The objection will be sustained.

8          MR. BUEHLER:  Thank you, your Honor.

9          THE COURT:  The Court did not consider that.

10         The last issue remains as to whether there are any --

11   the Government has offered a proposed Order of -- a written

12   Order of Forfeiture.  And are there any objections to the

13   language contained therein?

14         There's also the issue of restitution, which we need

15   to resolve.

16         MR. DUGDALE:  Yes, your Honor.  Briefly, on the

17   restitution.

18         In light of the Court's decision to order the

19   forfeiture and the money judgment, the forfeiture is not

20   legally duplicative of restitution; but in this case it's

21   practically duplicative of restitution.  So in light of that

22   fact, there's probably no need for the Court to address that

23   issue.  If for some reason I figure out that I'm incorrect

24   about that issue, under Rule 35 we would have seven days to

25   object to any clear error in the judgment, and we will do so.

1          Thank you, your Honor.

2          THE COURT:  Okay.  Anything further from the

3  Defendant?

4          MR. BUEHLER:  No, your Honor

5          THE COURT:  Is there any legal reason why the Court

6  should not now pronounce sentence?

7          MR. BUEHLER:  No, your Honor.

8          THE COURT:  Okay.  Mr. Krylov will be sentenced as

9  follows:

10          The Court having considered both the sentencing

11  factors enumerated at Title 18, United States Code,

12  Section 3553, and the advisory guideline range of life, based

13  upon an offense level of 48, the Court determines that the

14  offense level is properly calculated as 48.  The two level

15  adjustment not being applied for obstruction and a Criminal

16  History Category I, the offense level, again, is 48.

17          The offense level is five levels higher than the

18  highest level listed in the Federal Guidelines for life without

19  the possibility of release.

20          It is ordered that the Defendant shall pay to the

21  United States a special assessment of $500, which is due

22  immediately.

23          All fines are waived as it is found that the

24  Defendant does not have the ability to pay a fine within the

25  fine range.

1        Pursuant to the <u>Sentencing Reform Act of 1984</u>, it's

2   the judgment of the Court that the Defendant, Mr. Petro Krylov,

3   is hereby committed on the Second Superseding Indictment to the

4   custody of the Bureau of Prisons to be imprisoned for a term of

5   life without the possibility of release.   The term consists of

6   life without the possibility of release on each of Counts One,

7   Two, Three and Four and the term of 240 months on Count Five.

8        The life sentences on Counts One, Two, Three and Four

9   shall be served consecutively.

10       The sentence of 240 months on Count Five shall be

11   served concurrently with the life sentences imposed on each of

12   Counts One through Four.

13       Should the Defendant ever be released from

14   imprisonment, the Defendant shall be placed on supervised

15   release for a term of five years.   The term consists of five

16   years on Counts One, Two, Three and Four and three years on

17   Count Five, all such terms to run concurrently and under the

18   following terms and conditions:

19       The Defendant shall comply with the rules and

20   regulations of the U.S. Probation Office and General Order 318.

21       The Defendant shall refrain from any and all unlawful

22   use of a controlled substance.

23       The Defendant shall submit to one drug test within

24   15 days of release and imprisonment and at least two periodic

25   drug tests thereafter, not to exceed eight tests per month, as

1  directed by the probation officer.

2        This condition of supervised release is imposed

3  because, as pointed out in Paragraph 84 of the Presentence

4  Investigation Report, the Defendant was not interviewed by the

5  probation officer; and, therefore, the Court cannot make the

6  determination that the Defendant poses a low risk of substance

7  abuse.

8        During the period of community supervision the

9  Defendant shall pay the special assessment in accordance with

10  the judgment's orders pertaining to such payment.

11        The Defendant shall comply with the immigration rules

12  and regulations of the United States.  If deported from this

13  country, either voluntarily or involuntarily, not reenter the

14  United States illegally.

15        The Defendant is not required to report to the

16  Probation Office while residing outside the United States.

17  However, within 72 hours of release from any custody or any

18  reentry to the United States during the period of court-ordered

19  supervision, the Defendant shall report for instructions to the

20  U.S. Probation Office located at 312 North Spring Street,

21  Room 600, Los Angeles 90012.

22        Condition Four is imposed because the Defendant was

23  found to be residing in the United States illegally.

24        The Defendant shall not possess or obtain any

25  driver's license, social security number, birth certificate,

1   passport or any other form of identification in any name other

2   than his true legal name without prior written approval of the

3   probation officer, nor shall the Defendant use for any purpose

4   or in any manner any name other than his true legal name.   This

5   condition was imposed based on the evidence offered at trial

6   and also based on information contained in the Presentence

7   Investigation Report that reflected or referenced that the

8   Defendant was not a citizen and not here legally, nevertheless,

9   possessed illegally a social security number.

10          The Defendant shall cooperate in the collection of a

11  DNA sample.   That is required or mandated by statute.

12          Before the Court is the Defendant, who has been

13  convicted of conspiracy of three counts of hostage taking --

14  conspiracy and three counts of hostage taking resulting in

15  death and money laundering.   All of the charges stem from the

16  Defendant's involvement in an elaborate scheme to abduct, hold

17  for ransom, murder and then dispose of Russian business people

18  and immigrants and citizens, American citizens of Russian

19  descent.

20          Pursuant to Title 18, 3553, the Court shall impose a

21  sentence sufficient to achieve each of the goals enumerated in

22  the statute.   The Court believes that the jury sentence in this

23  case, life without the possibility of release, is the

24  appropriate sentence to be imposed, either under a 3553

25  analysis or a guideline analysis.

35

1        The Court did not impose a fine -- the fine range is

2   $25,000 to $250,000 -- because it has been established that the

3   Defendant will not have the ability to pay a fine because he

4   will never be again released from custody.  The Court has

5   imposed a term of supervised release only in the unlikely event

6   that the Defendant is released from custody.

7        The personal money judgment in the sum already

8   enunciated by the Court will be entered today and has been

9   placed on the record.

10       I just would like to know if there's any other

11  matters that the Court needs to address, from the Government or

12  from counsel?

13       MR. BUEHLER:  Your Honor, we would request that the

14  Court include in its Order a recommendation to the Bureau of

15  Prisons regarding the facility to which Mr. Krylov has

16  designated.  The only family he has in the United States is in

17  the Los Angeles area.  That's his wife and his six or seven-

18  year-old daughter.  So we would ask that the Court recommend a

19  facility that's as close as possible to Los Angeles for that

20  purpose.

21       THE COURT:  The Court is going to leave that to the

22  discretion of the Bureau of Prisons.

23       MR. BUEHLER:  But I understand it would, in all

24  events, be to the discretion of the Bureau of Prisons; but we

25  would request that the Court make that recommendation.

1      THE COURT:  The request is denied.

2          MR. BUEHLER:  Thank you, your Honor.

3          MR. EVANS:  One more moment.

4      (Pause)

5          MR. BUEHLER:  Just along the same lines, your Honor.

6  Mr. Krylov, because of the restrictions that have been placed

7  on him at MDC throughout this matter and for the last five

8  years, has not been able to have any contact or visit with his

9  wife.  So we would request that the Court order or at least

10  recommend to the Bureau of Prisons and MDC that before he is

11  removed from MDC that he be permitted to have a visit with his

12  wife.

13          THE COURT:  The request will be denied.

14          MR. BUEHLER:  Thank you, your Honor.

15          THE COURT:  That is going to be determined by the

16  Bureau of Prisons.  The security issues presented in this case

17  are such that they are beyond the expertise of this Court and

18  the Bureau of Prisons must have full discretion to handle the

19  Defendant appropriately.

20          I would just have one final comment for Mr. Umansky:

21          Mr. Umansky, I know you've sat through a long period

22  of time for the Defendant to be sentenced.  I know you must

23  have had -- he doesn't have to stand up; please sit down -- you

24  must have had instances in your life where you wondered whether

25  you've made the right decision concerning to inform the FBI

1   concerning your son.  I've heard all of the evidence in the

2   case.  You had no choice.  Your son was not going to live.  You

3   had to inform the FBI.

4           MR. UMANSKY:  I trust --

5           THE COURT:  Because of that, sir, the Defendants were

6   apprehended and prosecuted.  That's all I have to say.  Thank

7   you very much.

8           MR. UMANSKY:  I trust the United States Government.

9           THE CLERK:  All rise.  The Court's in recess.

10      (Recess taken from 2:33 p.m. to 3:27 p.m. / Parties

11  present; case recalled)

12          THE COURT:  Please remain seated.  I apologize to

13  everyone in the court having to have you return.  One final

14  matter.  The Court needs to advise the Defendant of his right

15  to appeal.

16          Mr. Krylov, you have a right to appeal your sentence.

17  With few exceptions, any notice of appeal must be filed within

18  ten days from today's date.  If you request, the Clerk of the

19  Court will prepare and file a Notice of Appeal on your behalf.

20          You also have a right to have all of your costs on

21  appeal waived by filing the appropriate papers.

22          Is there anything additional that the Court needs to

23  advise the Defendant on?

24          MR. DUGDALE:  No, your Honor.  Thank you.

25          THE COURT:  Thank you very much.

38

1          MR. SPEAKER:  Thank you, your Honor.

2        THE CLERK:  The Court's in recess.

3      (This proceeding was adjourned at 3:27 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          January 16, 2008
            Signed                               Dated


*TONI HUDSON*

FEDERALLY-CERTIFIED TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC